Good morning, your honors. Deanna Dotson, representing appellant Alvar Toledo. This case involves a breach of the plea agreement by the government. Mr. Toledo entered into this plea agreement with the understanding, the explicit understanding, that the terms in the plea agreement would be adhered to by the government. In that agreement, there were stipulations as to the drug amount and as the base offense level. Additionally, there was a provision pursuant to the sentencing guidelines section 1B18A that states that self-incriminating information that is given pursuant to confidential conversations will not be used against him. Let me ask you about that. As I read the PSR, the Appropriation Sensing Report, there were two mentions of the incriminating evidence of Mr. Toledo using or dealing 38 pounds of methamphetamine instead of just 793 ounces. One mention was that he was arrested on November 2nd, 2011. On page 7 of the Appropriation Sentencing Report, it shows that he told investigators about the 38 pounds on November 2nd, 2011. There is a request for judicial notice by you as to a letter, a proffered letter, dated December 1st, 2011. My question to you is, isn't the balance of evidence that he made the statements to investigators regarding 38 pounds on November 2nd, 2011, before there was any plea negotiations, before there was any protected information, before there was any proffer? Your Honor, I don't believe that that information is really clear, because when they were in their confidential discussions, and this was mentioned during sentencing hearing, the attorney representing Mr. Toledo at that time said that it was their impression that all the information, including the 38 pounds... It was his impression. There was one attorney, right? Correct. However, during the sentencing hearing, the U.S. attorney did mention that state a lot of this information may have been repeated at subsequent debriefings, but has already been said, and that's why it wasn't protected. However, the argument that is presented is that it should have been told to the attorney and Mr. Toledo at that time that the information you're giving me now is not protected because you've already given it, and that was not done. Well, he was given a Miranda warning. Correct, but you know there's... This was on the same day he was arrested. Correct. So what you're saying is that at that point, the government was obligated to say, if there are plea negotiations, and if you make a proffer, what you say in the proffer will not be used against you in sentencing, but if you say something now, it may be used against you in sentencing. This is sort of a Miranda on steroids? I don't believe that's the way it actually happened, but I believe it's a government's ethical duty to say, wait a minute... Do you have a case that says so? Pardon? Do you have a case that says so? No, it would just fall under the integrity and fairness of the judicial system that if something is not protected, that it should be made known, because the attorney was not aware of that at the time. The argument I think you're making, but I'm not sure it was made in the brief, so help me out, is that by the time they get to the plea negotiations, that it's illusory, in effect, to say that there's just 723 grams, because they knew they had the prior 38-pound evidence. So it was illusory for them to enter into the plea negotiations. Is that sort of the gist of your argument? I think that's part of it, yes. So now my question is, did you make that argument in your brief? Yes, I did, Your Honor, and I don't have that written down, but I did say that Mr. Toledo entered into the agreement under false pretenses then. If he was under the impression that the drug amount that was mentioned was the drug amount he was pleading to, he was also under the impression at that time that the 38 pounds was protected information. Now, there's a point that's not anywhere in the record, but I think needs to maybe be considered, is Mr. Toledo was a drug user, and that's in the PSR. He smoked a half to a gram a week of methamphetamine. So who's to say at the time he was arrested that he was not under the influence and really didn't remember what happened? You told me that he received a Miranda warning. Correct. The Miranda warning was that whatever he said could be used against him. Correct. Are you saying that there's some evidence in the record that at that time he was under the influence of drugs so that he couldn't understand the Miranda warning? No, I'm not saying because there is no evidence to my knowledge of that fact. I'm just saying that if you're going to agree, plead guilty to these facts, then you need to be aware that these are the facts that you're going to be, the sentence is going to be based on these facts. Let me ask you about that because the stipulation, as I recall, basically had the language that there would be not less than a certain quantity of drugs. Correct. Almost by implication suggests that there could be, that puts a floor, not a ceiling. What's your response to that? No, I disagree with that, Your Honor, because I think not less than means that you would not go below that amount. That amount is the amount, that's correct, that's the fact. Does not less than mean you can't go more than? I would take it that you can't go more than because I'm taking that that was the amount that was in the information that he pled guilty to. So we should read not less than to mean not more than. I think that's the case, Your Honor, because it was never stated. The difficulty is that the clear language of the agreement says not less than X and it doesn't say and no more than Y. It just simply says that we're not going to go into the court suggesting that there's anything less than $723,000. Correct. Well, to me that would be ambiguous language then because if the defendant, if Mr. Toledo was pleading on that amount, that amount was in the information, then that to me was his understanding and the attorney's understanding that that's the amount of drugs, not anything more. And for the U.S. government to say that in their brief clearly the government stipulated only to the minimum so drugs could be admitted by the defendant and would be considered, you don't do that when you make a plea agreement. You stipulate. You're to uphold those stipulations in that plea agreement, and that was not done. Let me ask you this. Why don't we ask Judge Bea's question? Yes, and then I would like to. And after that, I know you want to reserve your time. Yes. Paragraph 19 of the plea agreement allows the government to make mention of related conduct. That's boilerplate. That's all that was in there. Isn't 38 pounds related conduct? It would, but it would not because if it's protected under 1B1.8A, it says that you have a duty, the government has a duty to give information about relevant conduct, but it cannot be used against for the sentencing guideline range. And so in this case, it was used against him. I will, any other questions, I'll reserve my time. Thank you, Your Honor. May it please the Court. Good morning, Your Honors. Mark Enciano for the United States. There was no breach of the plea agreement in this case. The plain language clearly said, as the Court has already indicated, not less than. Clearly that indicates a four. Isn't there a little bit of an element of sandbagging here? You have 793 pounds in the plea agreement, and you have that in the indictment, and you know about the 38 pounds because he said so that it was a rest, right? Correct. And you don't use that. Why? Well, Your Honor, the distinction is because the 723 grams was methamphetamine that was actually seized. The 38 pounds, all we had was his admission. The 38 pounds is going to fall under the generic methamphetamine category. We're not going to have it to analyze it to find out a purity. So there's going to be a conversion, which is what probation had done. So it's going to be up to probation to determine that, and that is routinely left to probation in our district in regards to those amounts that are simply admissions by the defendant or from other source, but that is not actual drugs that we have seized in hand like we did with the 723 grams. But in fairness to him, he gets arrested. He makes a calculated judgment that it would be a little bit hard to deny the 723 grams that you have, sort of red-handed, if you will. And then he has to make a judgment, but it seems that nothing in the record would suggest that the 38 pounds is going to enter in his calculus in entering into this plea agreement because it's like the elephant under the table here. So my question is, how is that fair to Mr. Toledo? Well, Your Honor, the defendant, and part of the problem here is because the way this was raised and it was not before the district court, the government hasn't been able to provide really and fill out the record as indicated in our brief. The discovery that went out, and I'm going outside the record here, if you'll permit me, shows that Mr. Toledo's statements were documented in a report of investigation, which was disclosed to the defense eight days before the proffer agreement was ever entered into. So we can't, yeah, should we remand it for consideration? Because we can't really look at the facts that are not, that were not really considered in the district court. Well, I'll leave that to you, Your Honor. But even without that, the fact that to say there was a surprise, I think, is not correct. This was in the pre-sentence report, clearly indicated in the draft pre-sentence report. The defendant had every opportunity to object. Not only did he make no objection to the PSR, he made no objection at the outset of the sentencing hearing when the district court specifically asked whether there were objections. Even though he immediately started arguing to the contrary, even at the end of the hearing, if you look at the very end of the transcript of the sentencing hearing, the judge asked again, is there any basis why this is not a legal sentence or why there's any error? And again, counsel said, no, there's no, I have no objection to the sentence. Separate question. Didn't the government in paragraphs 10 and 11 agree that the starting point for sentence calculation was level 36? We did. We did. And what did you argue? Well, the starting level was 36 based on the seized methamphetamine. And then after probation had determined that in fact the 38 pounds should come in as relevant conduct, that went up to a 38 based on the not less than language. You agreed as part of the bargain to say 36. That the seized amount, that was the intention, that the seized amount was a level 36 based on that. You agreed that that would be the starting point for sentence calculation. The starting point. And then at sentencing, you argued that it should be 38. Correct, based upon. Is that a breach? No, because the not less than language, as we discussed earlier, left as a floor. I'm assuming you've been an assistant U.S. attorney for more than just a little bit. 16 years, Your Honor. Okay. Isn't the government required to turn square corners on plea bargains? I mean, you've certainly been in front of a sentencing court, I would guess, where you had to say to the court, whatever other information may have come before the court, we agreed to do X. And as a prosecutor in the plea agreement, I'm bound by that. Correct. Why shouldn't we view that this way? Because the language, not less than language, was specifically included and put in there contemplating that the. . . Well, I don't see those in conflict. The promise is to start at 36. It's not to end at 36. What language in the plea agreement allows you to overwrite the starting point being 36? The initial stipulation, which says the defendant shall be sentenced, shall be responsible for not less than 723 grams. So the starting point, I guess it's always assumed that you have, the government has the opportunity to provide aggravating information, correct? Correct. And there is nothing that, in your view, restricted your ability to do that in the agreement? No, Your Honor. The reports that contained Mr. Toledo's admissions were turned over to probation in their preparation of the pre-sentence report. We knew it was going to be addressed. Whether it was going to be added as relevant conduct or not, that was a question we didn't know. That was going to be U.S. probation's call. We're here on plain error review, is that right? That's correct, Your Honor. And if I can touch on that, even if there was error in this case, we don't believe that it affected either the substantial rights of Mr. Toledo and certainly did not seriously affect the integrity of the proceedings. Mr. Toledo ended up being sentenced to 120 months, which ironically ends up being right in the middle of the guideline range that would apply if the relevant conduct had not been applied. So he ended up right where he was, even if the probation department had not included the 38 pounds. If there are no further questions, I would rest on our brief. All right. Thank you. Thank you. You have some time for rebuttal. Thank you, Your Honor. What's the harm? The harm is he was sentenced to a longer term than if we had started at level 36, using the same reductions that the court gave for safety valve, which she could sentence below the mandatory minimum of 120 months. So if you went down, it would come down not to a level 33, but a level 31. And if she's sentenced at the lower end of that level, which she did at level 33, that would be 12 months less, he would say. And that is significant when somebody is incarcerated and their liberty is taken away. Don't you think that this sentencing judge, given his remarks and his impression, the damage that 38 pounds of methamphetamine could cause to society, would have given him the same sentence? I don't think so, Your Honor, because if the government argued at level 36 to start with, then there are two sides that are giving the same united front, and they're both going to then be presenting that argument to the court. But that's not what happened. The 38 pounds, even in the presentence report under paragraph 12, page 6, according to the U.S. attorney, this statement about the 38 pounds is not protected. I don't feel that the attorney that was arguing during sentencing, if he'd known at the time that they made this plea agreement and at the time they signed it and pled guilty that that 38 pounds was not protected, I don't believe ethically he could have argued the way he did. And that's why I feel that the plea agreement was breached, not only upholding the stipulations, because it should have been clearer language then that the 723 and some odd grams was not the amount, but that was only the beginning, and they could go higher. It was very confusing to say not less than, and that was ambiguous, and it should be construed in favor of the defendant. Do you do a fair amount of criminal work? Yes, Your Honor. I'm a CJA-appointed attorney. Yes, that's what I thought. And isn't that a very typical language that we see in plea agreements, the not less than? No, it's not. We see it time and again. It might not be the only language, but it's not outlying language. No, but I really have not come across that specific language where it's not upheld, where the government then argues for something more than what they've agreed to stipulate it to, and that's what the defendant was relying upon. Those stipulations, the information that he gave, and he gave numerous information about his, you know, provided to dealers, the people he bought the drugs from, et cetera. So he had an anticipation that that was protected because it came under that agreement, and it's in the plea agreement under that paragraph 20D that that is protected information, will not be used against him. Thank you. Thank you, Your Honor. The case just argued, United States v. Toledo, is submitted. I'd like to thank both counsel for your argument this morning.
judges: Hawkins, McKeown, Bea